UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**
**NOV 18 2015**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff/Respondent, | CR 97-40009 |
| -vs- | MEMORANDUM OPINION AND ORDER |
| BARBARA JOHNSON, | |
| Defendant/Movant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Barbara Johnson ("Johnson") moves for a clarification of the Court's order at sentencing regarding restitution. Specifically, Johnson requests the Court to clarify whether the order includes interest on the restitution ordered.

## BACKGROUND

In February of 1997, Johnson was charged with embezzling approximately $76,400.00 from the bank where she was employed as a teller. According to the presentence investigation report (PSR), the law enforcement investigation revealed that she stole approximately $52,000 while at the Sunset Branch where she worked until June 16, 1995, at which time she was transferred to the East branch. While at the East branch, Johnson made 64 different entries in the general ledger between June 16, 1995 and May 21, 1996. On May 21, 1996, Johnson withdrew the last of four $5,000 withdraws from a customer's account. In the factual basis statement, Johnson admitted to embezzling a total of $56,400 from the bank and an additional $20,000 from the customer's account, making the total amount embezzled $76,400 over the four-year time period alleged in the indictment. (Doc. 10.)

Johnson was charged in a one count indictment of embezzlement in violation of 18 U.S.C. § 656. The dates of the offenses were listed in the indictment as "[o]n or about February 15, 1992

continuing to on or about May 22, 1996." (Doc. 1.) On April 21, 1997, Johnson entered a plea of guilty to the indictment. In the plea agreement, the government asked for restitution to the bank in the amount of $76,400. (Doc. 9.) Interest on restitution was not mentioned in the plea agreement. The plea agreement also contains an express waiver by Johnson of her right to appeal.

Paragraphs 11, 12 and 13 of the PSR contain the victim impact statement, indicating that the bank reimbursed the victim customer's account $1,857.59 for interest lost. The bank requested that Johnson be ordered to pay that interest. Based on the Sentencing Guidelines, the PSR writer could not recommend that interest be included as part of the loss.

On July 21, 1997, Johnson was sentenced to a term of 5 months imprisonment followed by 5 months home detention. She was ordered to pay restitution to the bank in the amount of $76,400. The Court did not award the interest requested by the bank in the amount of $1,857.59 which was discussed in paragraphs 11, 12 and 13 of the PSR. Payment of restitution was to be in full immediately; any amount not paid in full would be due in monthly installments of $150, to begin 14 days following Johnson's release. The minutes from the sentencing hearing show that the Court found Johnson did not have the ability to pay a fine, and the fine was waived. (Doc. 14.) The minutes say nothing about interest on the restitution.

Johnson was released from prison, got a job and, through the government's garnishment of her wages, she has paid the entire principal balance owing on her restitution. The government is continuing to garnish Johnson's wages in order to collect interest on the restitution. In its September 22 response to Johnson's pending motion, the government admits Johnson has paid the principal amount of restitution in full, but the government asserts that, as of that date, she owed $45,234.18 in interest. (Doc. 49.)

Johnson brought the instant motion seeking clarification of the order of restitution. She asserts that because the Court did not order interest on the restitution, the government cannot collect it. The government argues first that this Court lacks jurisdiction to change the restitution order. In

addition, the government contends that the Mandatory Victim's Restitution Act applies in this case, requiring interest to be paid on Johnson's restitution despite the Court's failure to impose interest.

## DISCUSSION

The Mandatory Victims Restitution Act (MVRA) was passed in 1996. The MVRA "applies in sentencing proceedings when the defendant has been convicted on or after the Act's effective date of April 24, 1996." *United States v. Williams*, 128 F.3d 1239, 1240 (8th Cir. 1997), citing 18 U.S.C.A. § 3663A(a)(1) (West Supp.1997). The MVRA provides that interest "shall" be payable on restitution of more than $2,500 unless restitution is paid in full within 15 days of judgment. 18 U.S.C. § 3612(f). Interest is computed at a rate equal to the weekly average 1-year constant maturity Treasury yield. 18 U.S.C. § 3612(f)(2). The court may waive interest, limit interest to a specific dollar amount, or limit interest to a specific period of time during which interest accrues. 18 U.S.C. § 3612(f)(3). The Attorney General also may waive interest. 18 U.S.C. § 3612(h).

Prior to the effective date of the MVRA on April 24, 1996, the Victim Witness Protection Act (VWPA), 18 U.S.C. §§ 3663-3664, guided the courts imposing restitution in criminal cases. The VWPA said nothing about interest on restitution, but courts held that interest could be imposed on restitution pursuant to the VWPA. *See, e.g., Government of Virgin Islands v. Davis*, 43 F.3d 41, 47 (3d Cir. 1994) (affirming district court's inclusion of prejudgment interest in restitution order under VWPA); *United States v. Kress*, 944 F.2d 155, 160 (3d Cir. 1991) (holding that postjudgment interest on restitution order was implicitly authorized by the VWPA); *United States v. Smith*, 944 F.2d 618, 626 (9th Cir. 1991); *United States v. Rochester*, 898 F.2d 971, 983 (5th Cir. 1990) (holding that although the VWPA was silent on the issue of interest, "both pre- and postjudgment interest may be awarded under the VWPA").

Because Johnson pleaded guilty and was sentenced after April 24, 1996, the government argues that the MVRA applies to her case, thus mandating payment of interest on the entire amount of restitution ordered because the interest was not explicitly waived. Johnson asserts that applying the MVRA to her case violates the Ex Post Facto Clause because it increases the punishment for pre-

3

enactment conduct. The government responds that there is no Ex Post Facto Clause violation because part of Johnson's crime occurred within the month following the effective date of the MVRA.

"The ex post facto clause proscribes application of a law that changes punishment in a manner that inflicts greater punishment than the law annexed to the crime at the time of its commission." *United States v. Cooper*, 35 F.3d 1248, 1250 (8th Cir. 1994) *cert. granted, judgment vacated*, 514 U.S. 1094 (1995) and *opinion reinstated*, 63 F.3d 761 (8th Cir. 1995), *citing Calder v. Bull*, 3 U.S.(3 Dall.) 386, 390, 1 L.Ed. 648 (1798). "[T]wo critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29 (1981). Not only the retroactive criminalization of an act, but also the retroactive increase in the severity of punishment may violate ex post facto prohibitions. *Lynce v. Mathis*, 519 U.S. 433, 441 (1997). "Critical to relief under the Ex Post Facto Clause is ... the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver*, 450 U.S. at 30.

The MVRA amendments made changes in addition to interest on restitution. Prior to the amendments, the statute required a court to consider a defendant's ability to pay in setting the amount of a restitution order, and whether to grant restitution was discretionary. *See Williams*, 128 F.3d at 1241. As amended, the statute provides that the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant. 18 U.S.C. § 3664(f)(1)(A). In *Williams*, the Eighth Circuit held that retrospective application of the MVRA violates the Ex Post Facto Clause because restitution imposed as part of a defendant's sentence under the MVRA is criminal punishment, not a civil sanction, and the shift from discretionary to mandatory restitution without consideration of a defendant's economic circumstances increases the punishment imposed on a particular defendant. *Williams*, 128 F.3d at 1241; *see also United States v. Ross*, 279 F.3d 600, 609 (8th Cir. 2002)

(restitution is a criminal penalty for purposes of deciding if *Apprendi* applies).[1] The majority of circuits have held that retroactive application of the MVRA to conduct occurring before its enactment would violate the Ex Post Facto Clause. *See United States v. Schulte*, 264 F.3d 656, 662 (6th Cir. 2001) (restitution imposed under the MVRA constitutes punishment, and "where an act was committed prior to the effective date of the MVRA, the retroactive application of the MVRA to that act violates the Ex Post Facto Clause."); *United States v. Richards*, 204 F.3d 177, 213-14 (5th Cir. 2000) (holding that application of the MVRA to an individual's conduct that occurred prior to its passage would violate the Ex Post Facto clause), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625 (2002); *United States v. Siegel*, 153 F.3d 1256, 1260 (11th Cir. 1998) (same); *United States v. Edwards*, 162 F.3d 87, 89-90 (3d Cir. 1998)(same); *United States v. Rezaq*, 134 F.3d 1121, 1140-41 n. 13 (D.C.Cir. 1998) (noting in dicta that retroactive application of the MVRA would violate the ex post facto clause); *United States v. Thompson*, 113 F.3d 13, 15 n. 1 (2d Cir. 1997); *United States v. Baggett*, 125 F.3d 1319, 1322 (9th Cir. 1997) (holding that retroactive application of the MVRA violates the Ex Post Facto Clause). *Contra United States v. Nichols*, 169 F.3d 1255, 1278–80 (10th Cir. 1999) (holding that retroactive application of the MVRA did not violate the Ex Post Facto Clause); *United States v. Newman*, 144 F.3d 531, 537 (7th Cir. 1998) (same).

Thus, there clearly is a constitutional limitation on applying the MVRA under the Ex Post Facto Clause. The VWPA required the Court to consider Johnson's ability to pay in setting the amount of restitution, and whether to impose restitution was discretionary. At Johnson's sentencing, the Court adopted the PSR which included specific findings about Johnson's ability to pay and stated

---

[1]In *United States v. Thunderhawk*, 799 F.3d 1203 (8th Cir. 2015), the Eighth Circuit stated that restitution "is essentially a civil remedy created by Congress and incorporated into criminal proceedings for reasons of economy and practicality." *Id.* at 1209, quoting *United States v. Carruth*, 418 F.3d 900, 904 (8th Cir. 2005). Like *Ross*, *Thunderhawk* and *Carruth* were decided in the context of whether *Apprendi* prohibits judicial restitution fact-finding. A ruling in *Thunderhawk* and *Carruth* that restitution is a penalty could have led to a conclusion that the Sixth Amendment jury trial right requires jury fact-finding for restitution awards. Only the Eighth Circuit can explain its seemingly conflicting pronouncements regarding restitution. It is clear, however, that in *Williams* the Eighth Circuit concluded that restitution is criminal punishment for purposes of an ex post facto analysis.

that restitution "may" be ordered. Under the VWPA, the Court could have ordered restitution in an amount less than the full amount of the loss, but it chose to impose the full amount requested by the government. The fine, however, was waived based on Johnson's inability to pay, and the Court did not impose any interest on the restitution. The Court did not award the interest requested by the bank in the amount of $1,857.59 which was discussed in paragraphs 11, 12 and 13 of the PSR. Under the VWPA, it was not necessary for the Court to explicitly waive interest on the restitution because interest was not mandatory.[2] In fact, the Court would have needed to specifically impose interest, and to decide the interest rate. To apply the MVRA to Johnson's criminal activity prior to the Act's effective date would increase the amount of restitution she is required to pay by more than $45,000 in interest. As a result, applying the MVRA and requiring Johnson to pay interest on the restitution would violate the Ex Post Facto Clause.

Relying on the Eighth Circuit's decision in *Williams*, the government argues that applying the MVRA's requirement that interest is payable on the restitution unless it is explicitly waived does not violate the Ex Post Facto Clause because Johnson "continued to commit her crime for almost a month after the MVRA went into effect." (Doc. 49 at 6.) In *Williams*, the defendant pleaded guilty to one count of aiding and abetting fraud in connection with access devices in violation of 18 U.S.C. § 1029(a)(5). The offense occurred on May 30, 1996, one month after the effective date of the MVRA. The Eighth Circuit held that Williams had "fair warning" that his criminal conduct on May 30, 1996 "could trigger mandatory restitution" to persons other than the victim of his May 30 offense, and "'that is all the Ex Post Facto Clause requires.'" *Williams*, 126 F.3d at 1241-42, quoting *United States v. Cooper*, 63 F.3d 761, 762 (8th Cir. 1995). As the Eighth Circuit emphasized, however, the record in *Williams* shows that the defendant did indeed have fair warning that he would

---

[2] At some time after Johnson's sentencing, the Judgment form was amended to reflect the requirements of the MVRA. On the revised Judgment form, the court can mark a box stating that "the defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the Judgment...." Or the court can mark a box that states the interest requirement is waived for the fine or restitution. Because Johnson's Judgment is on the form that complies with the VWPA, it is silent on waiving interest for the restitution. If the option would have been available, the Court would have marked the box waiving interest for the restitution.

6

need to pay restitution to persons other than the victim of the offense because "Williams did agree in his plea agreement to pay restitution to cellular companies beyond what was mandated solely for his offense of conviction." *Id.* at 1240.

Unlike the defendant in *Williams*, Johnson is not challenging the restitution order. The issue here is whether Johnson had "fair notice" that she would be required to pay interest on the restitution that was ordered. The record shows that she did not have any notice. The amount of restitution requested by the government in the plea agreement covered the offenses that occurred both before and after the effective date of the MVRA, but the plea agreement did not mention interest on the restitution. The bulk of the restitution ordered was based on pre-MVRA conduct, at a time when the courts needed to specifically order that interest be payable. Having to pay in excess of $45,000 in interest on the restitution would vastly increase the punishment for Johnson's crime, based on a few acts that occurred post-enactment as compared to numerous offenses that occurred prior to the effective date of the MVRA. Subjecting Johnson to this increased punishment under the new statute would violate the notice principle articulated in *Weaver*, that the lack of fair notice and governmental restraint is the critical factor in granting relief under the Ex Post Facto Clause. *See Weaver*, 450 U.S. at 30. Johnson did not have fair warning that she would be required to pay interest, and the Ex Post Facto Clause precludes application of the MVRA and collection of interest in this case.

The government argues that the Ex Post Facto Clause is not violated by applying the MVRA to Johnson's case because part of Johnson's crime occurred after the MVRA's effective date. Implicit in the government's argument is the idea that Johnson was sentenced for one, big ongoing offense. If all of Johnson's conduct can be characterized as parts of a single, continuing offense, it could be argued that her offense occurred after the effective date of the MVRA, justifying application of that statute without a violation of the Ex Post Facto Clause.[3] But the government does not cite

---

[3] With continuing offenses, such as conspiracies, ex post facto concerns are not present because, by agreeing to engage in a conspiracy, a defendant becomes culpable for all subsequent acts committed during the course of the conspiracy. Accordingly, a sentencing court's application of the MVRA to restitution orders for defendants whose conspiracies began before, but ended after, the Act's effective date does not violate the Ex Post Facto Clause. *See, e.g., United States v. Boyd*, 239

any authority for the proposition that embezzlement under 18 U.S.C. § 656 can be characterized as a single continuing offense.[4]

"[T]he doctrine of continuing offenses should be applied only in limited circumstances." *Toussie v. United States*, 397 U.S. 112 (1970). In *Toussie*, the defendant was indicted eight years after his eighteenth birthday for failing to register for the draft. At that time, there was a five-year statute of limitations for failure to register, so the issue was when that statute began to run. The defendant contended the charge could be brought only within five years of the registration period, which ended five days after his eighteenth birthday. The government claimed the offense was one that "continued to be committed each day that Toussie did not register." *Id.* at 114. The Supreme Court found nothing in the Selective Service Act that manifested an intent that failure to register be a continuing offense; the Court also found nothing "inherently" continuing about the offense such

---

F.3d 471, 472 (2d Cir. 2001) ("[A] sentencing court may constitutionally apply the MVRA to orders of restitution for defendants whose conspiracies began before, but ended after, the MVRA's effective date."); *United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000) ("[T]he MVRA applies to an ongoing conspiracy where the conspiracy began before the statute's effective date, but concluded after the statute's effective date."); *United States v. Kubick*, 205 F.3d 1117, 1128-29 (9th Cir. 1999) ("[A] statute increasing a penalty with respect to a criminal conspiracy which commenced prior to, but was continued beyond the effective date of the statute, is not ex post facto as to that crime ....") (internal quotation marks omitted).

[4]The government cites *United States v. Russell*, 186 F.3d 883 (8th Cir.1999), in which the Eighth Circuit considered whether the defendant's prosecution under the Deadbeat Parents Punishment Act ("DPPA"), 18 U.S.C. § 228(a)(3) (Supp.1999), for willfully failing to pay more than $10,000 in past due support obligations, violated the Ex Post Facto Clause because he had not accrued a past due support obligation greater than $10,000 after the June 24, 1998 enactment of the DPPA. The Eighth Circuit held that the timing of the accrual is irrelevant for purposes of the Ex Post Facto Clause:
> [T]he DPPA's requirement that the defendant have in excess of $10,000 in past due support obligations identifies what kind of obligation the defendant must willfully fail to pay to be subject to prosecution; the statute does not criminalize the mere accrual of those past due support obligations.

*Id.* at 886. The relevant fact was not when the defendant's debt in excess of $10,000 accrued, but rather when the willful failure to pay occurred. The holding in *Russell* that prosecution under the DPPA does not violate the Ex Post Facto Clause because the defendant's willful failure to pay occurred after the DPPA's effective date is not instructive on the issue whether embezzlement is a continuing offense.

8

as a conspiracy, where "each day's acts bring a renewed threat of the substantive evil Congress sought to prevent." *Id.* at 122. The Court held that failing to register for the draft was not a continuing offense and thus the five-year statute of limitations started to run once the defendant failed to register within the required period, and the defendant could not be penalized for failing to register eight years later.[5] According to the Supreme Court, an offense should not be deemed continuous "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.* This passage makes clear that the analysis should turn on the nature of the substantive offense, not on the specific characteristics of the conduct in the case at issue. *See United States v. Niven*, 952 F.2d 289, 293 (9th Cir. 1991) (per curiam). Therefore, to find that the conduct prohibited by 18 U.S.C. § 656 constitutes a continuing offense, the Court must determine either that the plain language of the statute contemplates a prolonged course of conduct, or that the prohibited conduct is inherently continuous.

The language of 18 U.S.C. § 656 describes instantaneous acts, not schemes or courses of conduct.[6] Because there is nothing in the language of the statute indicating that embezzlement is a continuing offense, the Court will proceed to the nature of the conduct prohibited by section 656. *Cf. United States v. Eklund*, 733 F.2d 1287, 1295-1302 (8th Cir. 1984) (discussing how legislative

---

[5] As reflected in *Toussie*, courts usually employ the continuing offense doctrine to determine if the statute of limitations prevents prosecution of a defendant. Normally the limitations period commences when a crime is complete. For a continuing offense, however, the statute of limitations does not begin to run until the last day on which the offense was committed. *See, e.g., United States v. McGoff*, 831 F.2d 1071, 1079 (D.C. Cir. 1987). Conspiracy is the prototypical continuing offense. *Id.* at 1078. "Continuing offense" is a term of art that does not depend on "everyday notion[s]" or "ordinary meaning." *Id.*

[6] The statute provides, in relevant part:
Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank ... embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank shall ... be fined not more than $1,000,000 or imprisoned not more than 30 years, or both ....

18 U.S.C. § 656.

changes to language of the statute after *Toussie* imposed a continuing duty to register for draft, making failure to register a continuing offense).

The Eighth Circuit has not ruled on whether embezzlement is a continuing offense in any context. There are conflicting decisions from the Fourth and Seventh Circuits regarding whether embezzlement is a continuing offense for purposes of the statute of limitations. *Compare United States v. Yashar*, 166 F.3d 873, 879 (7th Cir. 1999) (holding that "the limitations period would be virtually unbounded" if embezzlement under 18 U.S.C. § 6663 were a continuing offense) with *United States v. Smith*, 373 F.3d 561, 567–68 (4th Cir. 2004) (holding that a section 641 violation was continuing because in that case it involved a "recurring, automatic scheme of embezzlement under section 641 by conversion of funds voluntarily placed in the defendant's possession by the government"). The Seventh Circuit in *Yashar* had to decide how the statute of limitations applied to an ongoing embezzlement that "straddle[d] the limitations period." *Id.* at 876. Relying on *Toussie*, the Seventh Circuit rejected the argument that embezzlement could be treated as a continuing offense merely because the prosecutor chose to charge it as a continuing course of conduct. *Id.* at 877. It held that the statute of limitations begins to run on embezzlement, like other non-continuing offenses, "once all elements of the offense are established, regardless of whether the defendant continues to engage in criminal conduct." *Id.* at 880. The Fourth Circuit in *Smith* relied on the second *Toussie* factor-- the nature of the crime -- to conclude that embezzlement is a continuing offense "at least in those cases where the defendant created a recurring automatic payment scheme...." *Smith*, 373 F.3d at 567-68. In *Smith*, after failing to report his mother's death to the Social Security Administration, the defendant continued to collect and use Social Security funds deposited in their joint account. The Fourth Circuit said that "it may well be that different embezzlement conduct must be differently characterized" for purposes of the continuing offense doctrine. *Id.* at 568.

This Court is convinced that the principles enunciated in both *Yashar* and *Smith* compel the conclusion that embezzlement is not a continuing offense. Even if one were to agree with the Fourth Circuit's reasoning in *Smith*, Johnson's conduct differs from the scheme in that case. Contrary to the

embezzlement in *Smith*, Johnson's embezzlement was not automatically recurring. Rather, each embezzlement was a deliberately done and discrete act, and Johnson could have been charged for each discrete, individual act of embezzlement. Embezzlement is simply a variant of larceny with the additional element that "the original taking of the property was lawful or with the consent of the owner." *Smith*, 373 F.3d at 567. In *McGoff*, the D.C. Circuit described why larceny is not a continuing offense:

> The notion of "continuing offense" has traditionally identified a type of offense fundamentally different from most known to the common law. As first-year law students (presumably) learn, a criminal offense is typically completed as soon as each element of the crime has occurred. For example, a larceny is completed as soon as there has been an actual taking of the property of another without consent, with the intent permanently to deprive the owner of its use. The offense does not "continue" over time. The crime is complete when the act is complete. A "continuing offense," in contrast, is an unlawful course of conduct that does perdure. As the Supreme Court has described the notion, "the unlawful course of conduct is 'set on foot by a single impulse and operated by an intermittent force,' until the ultimate illegal objective is finally attained." *Toussie v. United States*, 397 U.S. 112, 136, 90 S.Ct. 858, 871, 25 L.Ed.2d 156 (1970) (White, J., dissenting) (quoting *United States v. Midstate Co.*, 306 U.S. 161, 166, 59 S.Ct. 412, 414, 83 L.Ed. 563 (1939)). The classic example of a continuing offense is conspiracy.

*United States v. McGoff*, 831 F.2d 1071, 1078 (D.C. Cir. 1987). The fact that embezzlement can be completed in one distinct transaction undermines the notion that it is inherently a continuing crime. In contrast to a continuing offense like conspiracy, the unlawful taking of funds by embezzlement is completed each time there is a taking. It does not "clearly contemplate a prolonged course of conduct." *Toussie*, 397 U.S. at 116. Because embezzlement under 18 U.S.C. § 656 is not a continuing offense, Johnson's rights under the Ex Post Facto Clause would have been violated if the Court had applied the MVRA to Johnson's case.

*United States v. Cooper (Cooper II)*, 63 F.3d 761 (8th Cir. 1995), does not support the government's argument. In that case, the Eighth Circuit noted that although firearms offenses were completed offenses rather than continuing offenses like conspiracies, because the grouping rules were in effect at the time the defendant committed the final firearms offense, the defendant had

notice that if he continued to commit offenses that are grouped together the revised guidelines would apply to the group. *See United States v. Cooper (Cooper I)*, 35 F.3d 1248, 1250 (8th Cir. 1994).[7]

The defendant in *Cooper* was charged with three separate counts of being a felon in possession of a firearm. Two of the counts were committed prior to the 1991 Guideline amendment that increased his penalty; the last count was committed after the amendment. The district court applied the amended Guideline to all three counts, and the defendant challenged his sentence on ex post facto grounds.

The Eighth Circuit in *Cooper* needed to determine the most appropriate way to handle the multiple counts for sentencing purposes when some of the offenses were completed before the later version of the Guidelines Manual became effective. The Eighth Circuit concluded that because Cooper's multiple firearms convictions were to be grouped together under section 3D1.2 of the Guidelines[8] it was appropriate to treat those convictions collectively as the equivalent of a continuing offense that straddled the revision in the Guidelines. *Cooper II*, 63 F.3d at 762. This did not violate the Ex Post Facto Clause, the Eighth Circuit reasoned, because Cooper had "fair warning" by virtue of the grouping rules that his offenses would be grouped for sentencing and that, consequently, if he committed a firearms offense after the revised version of the Guidelines went into effect that was closely related to his earlier firearms offenses, he would be sentenced under the revised version. *Id.* The Eighth Circuit also considered it constitutional that Cooper was subject to the harsher Guideline and sentence because, under the Guidelines, the prior firearms offenses were "relevant conduct" that would enhance Cooper's sentence for the firearms offense that occurred after the guideline increase,

---

[7]The opinion in *Cooper I* was reinstated by the Eighth Circuit in its later opinion in *Cooper II* which was issued after the Supreme Court remanded *Cooper I* for reconsideration in light of *California Department of Corrections v. Morales*, 514 U.S. 499 (1995). *See Cooper II*, 63 F.3d at 763.

[8]Section 3D1.2 of the Sentencing Guidelines provides that counts should be grouped if they involve substantially the same harm "[w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.2(b).

even if he had been convicted only on the latter count. *Cooper I*, 35 F.3d at 1251 and n. 4. The Eighth Circuit rejected Cooper's argument that the court erred in applying the "one book" rule.[9] *Cooper*, 63 F.3d at 762. *Cf. United States v. Siddons*, 660 F.3d 699, 706–07 (3d Cir. 2011) (no ex post facto violation because "grouping provisions, combined with the one-book rule, place a defendant on notice that a court will sentence him or her under the Guidelines Manual in effect during the commission of his or her last offense in a series of continuous, related offenses").

The Eighth Circuit's conclusion in *Cooper* is driven by the grouping, relevant conduct and one-book rules governing application of the Sentencing Guidelines. In contrast to the defendant in *Cooper*, Johnson was not charged with multiple counts, nor were multiple counts grouped for sentencing purposes, and so the grouping rules could not be said to have provided notice to Johnson that she would be subject to the harsher version of the restitution statute. *Cooper's* holding is inapplicable here because this case does not involve a question of relevant conduct or the application of the "one book rule" to a series of grouped offenses, or any other Sentencing Guidelines.

As explained above, the Eighth Circuit held in *Williams* that application of the MVRA to offenses that occurred prior to its enactment violates the Ex Post Facto Clause if it involves a harsher penalty. Because embezzlement is not a continuing offense and because Johnson had no notice, it would violate the Ex Post Facto Clause to require her to pay interest on the restitution ordered.

---

[9]The "one book" rule requires that a single Guidelines Manual govern a defendant's sentencing calculation in its entirety. *See United States v. Anderson*, 570 F.3d 1025, 1034 (8th Cir. 2009); *see also* § 1B1.11(b)(3) (requiring the Court to use the current Guidelines where a defendant is convicted of two offenses, the first before, and the second after, a revision to the Guidelines). The reason given for the "one book" rule is that "applying various provisions taken from different versions of the Guidelines would upset the coherency and balance the Commission achieved in promulgating the Guidelines. Such an application would also contravene the express legislative objective of seeking uniformity in sentencing." *United States v. Stephenson*, 921 F.2d 438, 441 (2d Cir. 1990).

The government's reliance on *United States v. Crawford*, 115 F.3d 1297 (8th Cir. 1997), is also misplaced. The Eighth Circuit has distinguished between restitution under the MVRA as a penalty, *see Williams*, 128 F.3d at 1241, and restitution under the Child Support Recovery Act (CSRA) as compensation. *See Crawford*, 115 F.3d at 1403 (ex post facto argument was "legally foreclosed" because restitution under the CSRA is not punishment "but rather seeks to compensate the child for the parent's failure to pay past due support obligations").

The Court has clarified that it did not apply the MVRA at Johnson's sentencing. The Court intentionally did not even award the interest requested by the bank in the amount of $1,857.59, and the Court did not order Johnson to pay interest on the $76,400.00 in restitution ordered under the VWPA. This Opinion does not make any changes to the restitution order. Accordingly,

IT IS ORDERED that the Motion for Clarification, doc. 44, is granted. The Court did not include interest on the restitution ordered, and interest should not be included in the amount of restitution owed by defendant Barbara Johnson. The United States must reimburse Defendant for any overpayments.

Dated this 18th day of November, 2015.

BY THE COURT:

*Lawrence Piersol* (signature)

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: *Deb Peterson* (signature)
(SEAL)         DEPUTY